UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 1:19-cr-09-JD |
| ) | |
| KRISTINA BLAKE ) | |

GOVERNMENT'S OBJECTION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE AND
ALTERNATIVE RELIEF

The United States of America, by United States Attorney Scott W. Murray, hereby objects to Defendant Kristina Blake's ("Blake") motion asking this Court to order compassionate release under 18 U.S.C. § 3582(c)(1)(A), or in the alternative recommend to the Bureau of Prisons that she be permitted to serve the maximum amount of time allowable at the end of her sentence on home confinement, pursuant to 18 U.S.C. § 3624. As explained below, the defendant does not suffer from a medical condition that puts her at a higher risk for complications from COVID-19. Accordingly, the Court should deny the motion with prejudice because the defendant has not met her burden of establishing that a sentence reduction is warranted under the statute.

BACKGROUND

On August 15, 2019, Blake pleaded guilty to conspiracy to distribute & possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(l)(A)(viii) and conspiracy to knowingly possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o). ECF No. 43. On November 21, 2019, this Court sentenced Blake to 120 months in prison. ECF No. 64. Defendant has served approximately 9 months of her 120-month sentence. Her good-conduct time release date is October 31, 2027.

The defendant now moves for a sentencing reduction pursuant to 18 U.S.C. § 3582(C)(1)(A). Blake initially filed a request for release with the Warden at FCI Danbury which was denied on June 5, 2020. Accordingly, defendant has exhausted her administrative remedies.

On September 11, 2020, defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 70. Defendant contends she suffers from Hepatitis C. The CDC guidelines currently state that someone with liver disease "might be at an increased risk for severe illness from COVID- 19."[1] And, it is true that hepatitis C can affect the liver.[2] However, CDC guidance also states that the CDC currently has "no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19."[3] Thus, on its face, CDC guidance does not currently list hepatitis C as a high-risk condition.

In response to Blake's motion, the Government consulted with Dr. J. Gavin Muir, Chief Medical Officer of Amoskeag Health in Manchester, New Hampshire, about her health history when examined under the applicable policy guidelines in U.S.S.G. § 1B1.13. After reviewing the defendant's motion and medical file for the period May 19, 2019 through May 19, 2020, Dr. Muir opined that the defendant has had Hepatitis C since 2015.

Dr. Muir further opines that all patients with Hepatitis C do not have liver disease but the fact that she has inflammation in her liver (elevated liver enzymes) in the context of having Hepatitis C makes it likely that she does have liver disease. Ideally we would have more data including a Hepatitis C viral load, elastography of the liver and a liver biopsy. If that testing was available it would definitively indicate if she

---

[1] CDC, People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited June 26, 2020).

[2] CDC, Hepatitis C, https://www.cdc.gov/hepatitis/hcv/index.htm (last visited June 25, 2020).

[3] CDC, What to Know about Liver Disease and COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited June 25, 2020).

had liver disease. In the absence of that information, in Dr. Muir's opinion, the patient might be at higher risk of developing severe illness. Although there is no question that Blake does have a diagnosis of Hepatitis C, there is no evidence, from the available records, that she does in fact have liver disease, and liver disease is not on the CDC's list of high-risk conditions that put patients at higher risk for developing severe illness if they were to contract Covid-19. Dr. Muir has advised that he would not contest Blake's motion based on her Hepatitis C medical condition.

## BOP's MEASURES DURING COVID

According to BOP's statistics, as of September 17, 2020, currently there are 1,889 federal inmates and 645 BOP staff who have had confirmed positive test results for COVID-19 nationwide. Currently, 11,849 inmates and 1,065 staff have recovered. There have been 120 federal inmate deaths and 2 BOP staff member deaths attributed to COVID-19 disease. Of the inmate deaths, 4 occurred while on home confinement. Conditions at FCI Danbury now appear to be very different than they were in mid-May. As of September 17, 2020, BOP's website showed that there were currently a total of 2 active cases among inmates at FCI Danbury, and 0 active case among staff, and that there has been just one death (an inmate).

## LEGAL FRAMEWORK

This Court may, in certain circumstances, grant a defendant's motion to reduce her sentence. 18 U.S.C. § 3582(c)(1)(A). A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

In accordance with Congress' directive, the Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[4]

The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. U.S.S.G. § 1B1.13, comment. (n.1(A)). These include an assessment of the defendant's medical condition, age, family circumstances, and other reasons:

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,

---

[4] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>> (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

USSG § 1B1.13, comment. (n.1).

The policy statement is not the only source of criteria a court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction. Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at App. Note 1(D). Accordingly, a court may grant compassionate release not only on grounds specified by the Sentencing Commission, but also those set forth in the relevant BOP regulation governing compassionate release. That regulation appears at BOP Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the § 1B1.13 policy statement. The program statement defines a "debilitated medical condition" as follows:

> Debilitated Medical Condition. RIS ["Reduction in Sentence"] consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:

5

> • Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
>
> • Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

Program Statement 5050.50 at 5.

The program statement's provisions regarding the class of inmates eligible for compassionate release are also slightly different from the related provision in Section 1B1.13. To the extent that the program statement and the policy statement conflict, it is the policy statement – i.e., the source directly authorized by statute – that is binding. An interpretation in the program statement that does not contradict the policy statement, however, is entitled to some weight. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).

**ARGUMENT**

**I.     Blake Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.**

Blake's request for a sentence reduction should be denied on the merits because she has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include certain specified categories of medical conditions. USSG § 1B1.13, comment. (n.1(A)). Those categories include, as particularly relevant

here, a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, comment. (n.1(A)). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

Here, Blake cannot meet her burden to show an "extraordinary and compelling reason" for a sentence reduction, as that phrase is defined. Her assertion that she suffers from Hepatitis C does not rise to the level of severity required under the policy statement. Her Hepatitis C diagnosis does not qualify her for inclusion on CDC's list of patients at higher risk for developing severe illness from Covid-19.

Thus, Blake has failed to show that she suffers from a "serious . . . medical condition," or that, even if she does, that the medical condition "substantially diminishes" her ability to "provide self-care within the environment of a correctional facility," or that the condition is one from which she is "not expected to recover." U.S.S.G. 1B1.13, comment. (n.1(A)). *See United States v. Hilliard*, 2020 WL 3182778 (S.D.N.Y. June 15, 2020) (denying compassionate release motion by 40-year-old inmate with asymptomatic Hepatitis C); *United States v. Mohammed*, 2020 WL 3080176 (D.D.C. June 9, 2020) (denying compassionate release motion by inmate with Hepatitis B that did not require treatment). And because Blake has not identified a medical condition that falls within one of the categories specified in the policy statement's application note, she cannot demonstrate "extraordinary and compelling reasons" within the meaning of the compassionate release statute, and is ineligible for relief.

The mere existence of the Covid-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. Section 1B1.13's categories encompass serious medical conditions afflicting an individual inmate, not

generalized threats to the entire population. As the Third Circuit has held, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). *See also United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. March 25, 2020) ("a reduction of sentence due solely to concerns about the spread of Covid-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify Covid-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, it would be detrimental to BOP's organized and comprehensive anti-Covid-19 regimen, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

In this case, Blake does not prove that she is particularly vulnerable to the virus. *See United States v. Khawaja*, No. 18-CR-127-LM, 2020 WL 1940848, at *9 (D.N.H. April 22, 2020) (denying compassionate release motion where defendant "has not submitted sufficient proof that he suffers from a medical condition that puts him at higher risk for complications from the virus"). She cannot show that her immediate release will lessen her risk of contracting Covid-19. She cannot deny that Covid-19 has spread throughout the Nation generally. Moreover, BOP has taken extensive measures to protect the staff and inmates at FCI Danbury, including by restricting the ability to come and go from the facility, screening new arrivals for symptoms, taking measures to allow greater social distancing during meals and in groups, and isolating anyone showing symptoms of Covid-19.

In sum, because Blake's health conditions do not amount to "extraordinary and compelling

reasons" under the compassionate release statute and sentencing guideline, and because she is not especially vulnerable to the Covid-19 pandemic, Blake has failed to meet her burden, and her motion to reduce her sentence should be denied.

II. **In the Alternative, Blake is a Drug Trafficker Whose Early Release From Imprisonment Would Endanger the Community and Contravene the Statutory Sentencing Factors.**

In the alternative, even if Blake were eligible for compassionate release based on her medical condition, this Court should exercise its considerable discretion and decline to order early release under section 3582(c)(1)(A). In light of her history as an armed methamphetamine dealer with a Criminal History Category of V, she has not shown that she would not be a danger to the safety of the community, as required under U.S.S.G. § 1B1.13(2). Nor has she demonstrated that aborting her 10-year prison sentence after less than one year's imprisonment would comport with the sentencing factors in section 3553(a).

The crimes for which Blake is currently incarcerated are serious drug and firearms conspiracies. Blake pleaded guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, and to conspiracy to possess firearms during a drug trafficking offense. The drug quantity carried a mandatory minimum sentence of ten years' imprisonment.

Further, Blake has served less than one year of her 10-year sentence. Given the nature of her crimes and the time she has left to serve, a reduction of her sentence would greatly minimize the impact and seriousness of her offenses. See *United States v. Chambliss*, 948 F.3d 691 (5th Cir. 2020); *United States v. Mackenzie*, ––F. Supp. 3d ––, 2020 WL 2104786, at *3 (D. Mass. May 1, 2020) (denying compassionate release in part because defendant had 40 months left to serve on an 144-month sentence); *United States v. Butler,* 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release because releasing defendant when he had served only 15 months of a 60-month sentence would "disserve" the § 3553(a) factors). In addition, she represents an unacceptable danger to the safety of the community pursuant to U.S.S.G. § 1B1.13(2). *See Delacruz v. United States*, 2020 WL 3270503, at *4 (D.N.H. June 17, 2020)

9

(finding that drug trafficker presented danger to community if released).

Likewise, the § 3553(a) factors weigh heavily against early release and strongly in favor of Blake's serving her full prison sentence. Sending Blake home after just 9 months would not reflect the "seriousness of the offense" and would undermine the need to "promote respect for the law," "afford adequate deterrence to criminal conduct," and "avoid unwarranted sentencing disparities." *See United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019)**.**

        Respectfully submitted,

        SCOTT W. MURRAY
        United States Attorney

Dated: September 25, 2020
        By: /s/ John S. Davis
        John S. Davis
        Assistant U.S. Attorney
        Bar No. 592
        U.S. Attorney's Office
        53 Pleasant Street, Fourth Floor
        Concord, NH  03301
        603-225-1552