UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                  Criminal No. 19-cr-09-JD
                                        Opinion No. 2020 DNH 182

Kristina Blake

O R D E R

Kristina Blake moves pursuant to 18 U.S.C. § 3582(c)(1)(A) to have her sentence reduced to time served based on the combined effect of her history of hepatitis C and the risks presented by the COVID-19 pandemic.[1]  In the alternative, she asks the court to recommend to the Bureau of Prisons ("BOP") that she be allowed to spend the maximum amount of her sentence in home confinement under 18 U.S.C. § 3624.  The government objects to the requested relief.  United States Probation and Pretrial Services has filed a report and recommendation on the motions.

Standard of Review

The Director of the BOP may bring a motion on behalf of a defendant to reduce the term of the defendant's imprisonment.

---

[1] Blake filed a motion pro se, and then her counsel was reappointed to represent her for purposes of seeking relief under § 3582(c)(1)(A) and filed a second motion.

§ 3582(c)(1)(A).  If the Director does not file such a motion on behalf of a defendant, the defendant may file a motion on his or her own behalf in certain circumstances.  The defendant must have "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or, thirty days must have passed since the warden at the defendant's facility received the defendant's request without a response.  Id.

When a defendant has satisfied the administrative exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "extraordinary and compelling reasons warrant such a reduction" and "after considering the factors provided in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).  The statute also directs consideration of whether the requested "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A).

The applicable policy statement, United States Sentencing Guidelines § 1B1.13, was issued before § 3582(c)(1)(A) was amended under the First Step Act of 2018 to allow defendants to seek a reduction of their sentences in court.  See United States v. Tardif, 2020 WL 3960394, at *1 (D. Me. July 13, 2020).  As a result, courts have concluded that U.S.S.G. § 1B1.13 may guide but does not limit the court's authority to grant relief under

§ 3582(c)(1)(A).  That guidance provides that a defendant's term of imprisonment may be reduced if extraordinary and compelling reasons warrant the reduction or the defendant meets the age and time-served requirements and the defendant is not "a danger to the safety of any other person or to the community" and the reduction is consistent with the policy statement.

In addition, Application Note 1 to U.S.S.G. § 1B1.13 provides guidance as to when an extraordinary and compelling reason to reduce a defendant's sentence may exist.  Those reasons include medical conditions, age, family circumstances, and extraordinary and compelling reasons "other than, or in combination with, the reasons described."[2]

## Background

Blake pleaded guilty to conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), and conspiracy to knowingly possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o).  She was sentenced on November 21, 2019, to 120

---

[2] The government also cites a BOP regulation from BOP Program Statement 5050.50 as providing additional guidance for sentence reduction under § 3582(c)(1)(A).  The cited parts of the regulation, however, do not appear to be material to Blake's motion.

months in prison.  Her current release date, with good conduct time, is October 31, 2027.  She has served only 14% of her full term.  Blake is serving her sentence in a low security facility at the Federal Correctional Institute in Danbury, Connecticut ("FCI Danbury").

Blake is thirty years old and has had hepatitis C since 2015 as a result of intravenous drug use.  The government consulted with Dr. J. Gavin Muir, Chief Medical Officer of Amoskeag Health in Manchester, New Hampshire, about Blake's medical condition.  Dr. Muir reviewed Blake's records and confirmed that she has had hepatitis C since 2015.  Although the records do not definitively establish that she has liver disease, Dr. Muir concluded that it is likely that Blake does have liver disease because of inflammation in her liver.

The CDC states that currently it has "no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited September 30, 2020).  The CDC also states, however, that people serious medical conditions, might be at higher risk for severe illness from COVID-19, particularly if the underlying medical conditions are not well controlled."  Id.

As is noted above, Blake is housed at FCI Danbury. At the time of the motions and response, there were two active cases of COVID-19 among inmates and none among the staff at FCI Danbury.[3] Blake has made requests to the warden for a motion under § 3582(c)(1)(A), which have been denied.

In his report, the probation officer states that Blake has a significant criminal history, primarily involving drug offenses. Her crime of conviction involved significant amounts of drugs and firearms. After her arrest, Blake attempted to coerce her codefendant to provide false information on her behalf. She also has close ties to gangs through family members and friends, Gangster Disciple and BOWW, which is a white supremacist gang. She committed the crime of conviction while she was on parole for another drug crime.

In support of her motion, Blake states that if her sentence were reduced and she were released to home confinement, she would live with her mother in Franklin, New Hampshire. Blake's thirteen-year-old child also lives with her mother. Blake represents that she would continue to participate in programs for her medical and mental health and for drug addiction treatment.

---

[3] The same numbers are reported by the BOP at www.bop.gov/coronavirus, as of October 15, 2020.

The probation officer reports that Blake's mother's home has not been approved.  The probation office called Blake's mother, but she did not return their calls.  The probation officer also notes that Blake's mother threatened Blake's codefendant, after Blake's arrest, that he would have problems with Gang Disciples if he went to prison.

## Discussion

Blake seeks to have her sentence changed to home confinement for the remaining term of imprisonment, or, alternatively, seeks a recommendation that the BOP allow the maximum amount of time in home confinement at the end of her sentence.  The government opposes both requests.  There is no dispute in this case that Blake has exhausted administrative remedies.

As a preliminary issue, however, Blake asks the court both to reduce her sentence to time served and to convert her remaining prison sentence to home confinement.  She cites no authority to support the request to convert her sentence to home confinement.  Contrary to Blake's request, the BOP has the exclusive authority to decide whether to release a defendant to home confinement  § 3624(c); United States v. Perkins, --- F. Supp.3d ---, 2020 WL 4783558, at *8 (D.N.H. Aug. 18, 2020);

United States v. Duford, 2020 WL 3542266, at *4 (D.N.H. June 30, 2020). Therefore, to the extent Blake asks the court to convert her sentence to home confinement, that request is denied.

A. Extraordinary and Compelling Reason

Blake contends that she has a heightened risk of severe illness and death due to the combination of hepatitis C and the risk of contracting COVID-19 in prison. The government argues that Blake has not shown an extraordinary and compelling reason to support her motion because her medical condition is asymptomatic and does not meet the criteria listed in U.S.S.G. 1B1.13, Application Note 1(A).

Although Application Note 1(A) does not apply to Blake, Application Note 1(D) provides discretion in deciding when extraordinary and compelling circumstances exist.[4] Dr. Muir found that it was likely that Blake has liver disease because of hepatitis C, and the CDC states that liver disease may cause an increased risk of severe illness from COVID 19. In addition, the government stated in is objection: "Dr. Muir has advised

---

[4] Application Note 1(D) on its face is limited to the Director of the BOP. Courts have relied on that note, however, because the Sentencing Commission has been unable to amend the Guidelines to conform to the changes in § 3582(C) under the First Step Act. United States v. Murphy, 2020 WL 4606416, at *3, n.1 (D. Me. Aug. 11, 2020).

7

that he would not contest Blake's motion based on her Hepatitis C medical condition." Doc. 73, at *3.

Therefore, the court will assume, without deciding, that Blake has met her burden of showing an extraordinary and compelling reason to support a reduction in her sentence.

B. Sentencing Factors

Section 3553(a) states that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" provided in § 3553(a)(2), and lists factors for determining an appropriate sentence. The first two factors are particularly pertinent for purposes of this motion.[5] The first factor directs the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). The second factor focuses on the purposes of sentencing, including:

> the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and

---

[5] The third factor directs consideration of "the kinds of sentences available;" the fourth and fifth factors focus on the Sentencing Guidelines; the sixth factor addresses "the need to avoid unwarranted sentence disparities;" and the seventh factor directs courts to consider the defendant's restitution obligations.

8

      (D) to provide the defendant with needed educational
      or vocational training, medical care, or other
      correctional treatment in the most effective manner.

§ 3553(a)(2).

     The court considered all of the § 3553(a) factors when Blake was sentenced, less than a year ago, to 120 months in prison, which is an appropriate sentence for her serious crimes. The only intervening change is the COVID-19 pandemic.  Although Blake may be at increased risk if she were to contract COVID-19, the risk is currently low at FCI Danbury, where Blake is incarcerated.  Therefore, the COVID-19 pandemic does not weigh in favor of a reduced sentence for Blake.

     Further, as determined at sentencing, Blake's crimes were serious, and her criminal history is significant.  She was convicted of distributing large amounts of drugs and conspiracy to possess firearms for purposes of the drug crimes.  She committed those offenses while on probation for another drug crime.  She attempted to coerce her codefendant to provide false information on her behalf, and her mother threatened her codefendant.  Given her crimes of conviction and her history, Blake is likely to pose a danger to others and to the community if she were released from prison.

     If more were needed, which it is not, her release plan to live at her mother's house is unacceptable.  Her mother's home

has not been approved by probation.  Blake's mother did not return calls from probation, which suggests that her home likely would not be approved.[6]  Therefore, Blake does not have an acceptable place to live if she were released.

III.  Release to Home Confinement under § 3624

Alternatively, Blake asks the court to recommend to the BOP that she be allowed to serve the maximum amount of her sentence in home confinement.  While the BOP has exclusive authority to decide whether to release a defendant to home confinement, the court may recommend home confinement in an appropriate case. § 3624(c); United States v. Duford, 2020 WL 3542266, at *4 (D.N.H. June 30, 2020).  In determining whether to recommend home confinement, the court considers factors provided by Attorney General Barr in a memorandum issued on March 26, 2020, which include the risk of danger if the defendant were released, her conduct while in prison, and her risk associated with COVID-19.  Id.

Those factors have been considered in the context of § 3582(c)(1)(A) and do not support a recommendation for home confinement.  The BOP is in a better position to decide whether

---

[6] In addition, Blake's mother threatened her codefendant with harm from gang members, which suggests that her home would not be an appropriate place for Blake to live.

to release an inmate to home confinement in light of the circumstances of the inmate population and the spread of the COVID-19 virus.  See, e.g., United States v. Richard, 2020 WL 4500670, at *8 (C.D. Ill. Aug. 5, 2020); United States v. Beahm, 2020 WL 4514590, at *3 (E.D. Va. Aug. 5, 2020).

## Conclusion

For the foregoing reasons, Kristina Blake's motions for reduction of her sentence or alternatively for a recommendation of home confinement (document no. 68 and 70) are denied.

Blake's motion to seal BOP medical records (document no. 72) is granted.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

October 19, 2020
cc:  Counsel of record.